IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | C.A. NO. 1:14-CV-00348-KD-C |
| | § | |
| WAR BAMA BY CHRIS, LLC, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff Joe Hand Promotions, Inc., and hereby submits this Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment.

I.  **Nature of this Case**

This is an "Anti-Piracy" case involving the Federal Communications Act of 1934, as Amended, Title 47 U.S.C. § 605 et seq. (the "Communications Act"). Title 47 U.S.C. § 605 prohibits the piracy of television signals, via satellite.[1]

The Plaintiff, Joe Hand Promotions, Inc. is a family owned and operated business that distributes sports and entertainment programming to commercial establishments (i.e. bars, restaurants, casinos). By contract, Plaintiff was granted and has at all times owned the exclusive domestic commercial distribution rights in and to the July 7, 2012 telecast (including undercard bouts and commentary) of *Ultimate Fighting Championship 148: Silva v. Sonnen II Broadcast*

---

[1] Plaintiff pled this matter in the alternative. After discovery, Plaintiff moves solely under Title 47 U.S.C. § 605.

(the "Event"). Prior to the Event, Plaintiff entered into agreements with entities nationwide, allowing them to legally exhibit the Event to patrons in their commercial establishments.

The Defendants, Eula Sheffield Neal, individually and as an officer, director, shareholder and/or principal of War Bama by Chris, LLC d/b/a War Bama and War Bama by Chris, LLC d/b/a War Bama, own, manage, operate, and control the commercial establishment known as War Bama located at 20069 Highway 84, Silas, AL 36919 (the "Establishment"). Rather than purchase the proper commercial distribution rights to the Event from the Plaintiff, Defendants illegally intercepted and/or received and exhibited the Event in the Establishment without authorization from, or payment to, the Plaintiff. Defendants' actions constitute a violation of The Communications Act. Furthermore, as discussed below, Defendants' violation was committed willfully and for the purpose of financial gain.

In this motion, Plaintiff seeks to have this court grant summary judgment including: (a) statutory damages provided by Title 47 U.S.C. § 605 et seq. in the amount of $25,000; (b) a permanent injunction that enjoins Defendants from ever intercepting or exhibiting an unauthorized program in violation of the Communications Act; (c) the costs, attorneys' fees and expenses incurred by Joe Hand Promotions, Inc. in protecting its proprietary rights; and (d) such other and further relief to which Plaintiff is entitled.

## II. Issues Presented

1. Whether the Defendants violated Title 47 U.S.C. § 605 by exhibiting the Event at the Establishment.

2. Whether the Defendants' unauthorized exhibition of the Event was willful and for the purposes of direct or indirect commercial advantage or private financial gain.

3. Whether $25,000 is the appropriate amount of statutory damages for the Defendants' willful violation of the Communications Act.

### III. Undisputed Evidence

   A. Undisputed Evidence

   Plaintiff provides the following undisputed evidence to support a Final Summary Judgment against the Defendants:

Exhibit A:  Attached as Exhibit A is the Affidavit of Joe Hand, Jr., President of Joe Hand Promotions, Inc., forming the basis for an award of statutory damages under the Communications Act. Additionally, the Affidavit includes the following exhibits:

1. A true and correct copy of the Distributorship Agreement (redacted) between Plaintiff and the promoter of the Event, providing Plaintiff with the exclusive right to license the exhibition of the Event and all other Ultimate Fighting Championship Pay-Per-View Events to commercial establishments such as Defendants' Establishment, attached as Exhibit A(1);

2. A true and correct copy of the Affidavit of Auditor Walter Childess, an eye-witness, who after entering Defendants' Establishment on the night of the Event, observed the Event being exhibited to approximately forty (40) patrons at Defendants' Establishment on a projection screen and one (1) large television, attached as Exhibit A(2);

3. Rate Card for the Event, attached as Exhibit A(3); and

Exhibit B:   Attached as Exhibit B are the following verified discovery responses from the Defendants:  Eula Neal and War Bama By Chris, LLC d/b/a War Bama Responses To Plaintiff's First Set of Interrogatories, attached as Exhibit B.

Exhibit C:   Attached as Exhibit C is the Dish Network Residential Customer Agreement.[2]  *See* pg. 2, Section H.

### IV. Legal Standard for Summary Judgment

---

[2] Joe Hand Promotions requests this Court take judicial notice of the Dish Network Residential Customer Agreement pursuant to Rule 201(b)(2) of the Federal Rules of Evidence.  Rule 201(b)(2) permits a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  Fed.R.Evid. 201(b)(2).

Summary judgment is appropriate when "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c).

**V. Arguments & Authorities Title 47 U.S.C. § 605**

A.  <u>Defendants have violated Title 47 U.S.C. § 605</u>

47 U.S.C. § 605 provides, *inter alia*, that:

> [n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Title 47 U.S.C. § 605 protects against theft of satellite communications such as the type of programming at issue in this matter, prohibited broadcasts of satellite communications constitutes a violation of the Communications Act. *See KingVision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) ("Courts in this district have regularly recognized that the telecasts licensed by the plaintiff are covered by the provisions of Section 605.").

On its face, Title 47 U.S.C. § 605(a) is a strict liability statute. Accordingly, to establish liability, all Plaintiff must show is that the Event was exhibited in Defendants' Establishment and that such exhibition was not authorized by Plaintiff. *See KingVision Pay-Per-View, Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 (9th Cir. 1999) (A finding that the bar showed a portion of an event was "the only finding that matters. It compels judgment in favor of KingVision").

As discussed Supra and in Exhibits attached hereto, it is undisputed that on the date of the Event, without authorization, Defendants intercepted and/or received or assisted in the

4

interception and/or receipt of the transmission of the Event, and broadcast or assisted in the broadcast of the Event to the patrons of the Defendants' Establishment. Therefore, Defendants have violated the Communications Act and, Plaintiff is entitled to damages pursuant to 605(e)(3)(C)(i)(II) as discussed immediately below.

B. 605(e)(3)(C)(i)(II) Damages

A Plaintiff may elect for actual or statutory damages under § 605(e)(3)(C)(i). Statutory damages are appropriate where actual damages are difficult to prove. *See Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F. Supp. 730, 732 (S.D.N.Y. 1981); *Lottie Jonlin Thomas Trust v. Crown Publishers, Inc.,* 592 F.2d 651, 657 (2d Cir. 1978). Here, due to the difficulty in quantifying actual damages caused by the Defendants' violation, Plaintiff elects for statutory damages pursuant to § 605(e)(3)(C)(i)(II) which provides for a minimum award of $1,000.00 and a maximum award of $10,000.00 for each violation of section 605(a). For the reasons set forth herein, Plaintiff requests statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) against Defendants in the amount of $10,000 for Defendants' violation of the Communications Act.

Plaintiff's damages are not limited to lost licensing fees. *See* Exhibit A. Therefore, Plaintiff should receive additional compensation as it has been deprived of the "value, benefits and profits derived" from the unauthorized broadcast of the Event to Defendants' Establishment and its patrons as well as the value of "business investment, business opportunities and goodwill," in addition to the lost revenue which would have been derived from the delivery and exhibition of the Event to Defendant's Establishment and its patrons. *See American Television and Communications Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla. 1986).

Although difficult to quantify, the Affidavit of Joe Hand, Jr. details the types of damages suffered by Plaintiff:

1. As a result of theft by Defendant and others, Plaintiff has lost and will continue to lose as customers legitimate commercial establishments which are unwilling and financially unable to compete with those unauthorized commercial establishments, such as Defendant's Establishment, which steal sports and other closed-circuit programming.

2. Because these unauthorized commercial establishments offer the stolen programming to their patrons for no fee or for a fee which is less than the authorized establishments are required to charge, the legitimate commercial establishments with the right to broadcast closed-circuit programming cannot attract paying customers. As a result, the authorized commercial establishments fail to recover the sublicense fees paid, suffer the loss of patrons and incur financial loss.

3. When the unauthorized commercial establishment advertises the availability of the stolen programming, the number of patrons at the unauthorized commercial establishment increases and, as a result, Plaintiff and the authorized commercial establishments suffer additional losses.

4. Theft of closed-circuit broadcasts, such as the Event, by unauthorized commercial establishments, such as Defendant's Establishment, adversely affects both Plaintiff and its customers. Plaintiff pays substantial fees to obtain the right to sublicense the broadcast of closed-circuit programming to authorized commercial establishments. Plaintiff's primary source of revenue is the sublicense fees which it charges to authorize commercial establishments for the right to broadcast closed-circuit sports and entertainment programming such as the Event.

*See* Exhibit A at ¶¶ 12-13.

Defendants' actions have the potential to erode the base of Plaintiff's customers. Each patron of Defendants' Establishment is lost as a future patron of authorized broadcasts. *See Cox Cable Cleveland Area, Inc. v. King*, 582 F. Supp. 376, 381 (E.D. Ohio 1983). But for the Defendants' unauthorized broadcast of the Events, all or some of the patrons of Defendants' Establishment would have become paying patrons at one of the authorized establishments, Thereby increasing revenue to the legitimate establishments. An increase in revenue to these legitimate establishments bolsters the value of the Event, and in turn creates more revenue for Plaintiff. Further, Plaintiff has suffered damage to its goodwill and reputation and loss of its

6

right and ability to control and receive fees for the transmission of the Event. *See* Exhibit A, at ¶¶4, 11 & 12; *see also Quincy Cablesystems, Inc. v. Sully's Bar, Inc.*, 640 F. Supp. 1159, 1161 (D. Ma. 1986) (citations omitted):

> The unauthorized interception and exhibition of the [plaintiff's] programs results in more than a loss of fees to the plaintiffs. It also deprives the plaintiffs of the full value of the business investment, costs them business opportunities, and has a negative impact on the plaintiffs' reputation and good will. [Plaintiff] has suffered and continues to suffer the loss of its right to control the reception of its communications.

Plaintiff generally represents to legitimate commercial establishments the locations of other authorized commercial establishments licensed to receive the programming as part of the negotiation with customer establishments for licensing fees. *See* Exhibit A at ¶¶4, 6, 11 & 12. Therefore, when an unauthorized commercial establishment intercepts, receives and broadcasts closed-circuit programming, such as the Event, Plaintiff's reputation and goodwill suffers from what is interpreted as a misrepresentation. *See id*. Plaintiff should receive compensation from Defendants for these losses suffered. Furthermore, an incalculable element of damages is the ill-will and possible loss of future business from legitimate commercial establishments which refuse to pay sublicense fees because they cannot compete with unauthorized commercial establishments which steal closed-circuit programming, such as the Event. *See id.*

The continued viability of Plaintiff as a business depends upon the willingness and ability of legitimate commercial establishments to pay sublicense fees for the right to broadcast closed circuit sports and entertainment programming, such as the Event. *See* Exhibit A, at ¶¶ 4, 11 and 12. If such programming is made available to the public for no fee at unauthorized commercial establishments which have not purchased the right to broadcast such programming, legitimate

commercial establishments will find no reason to purchase the right to legally broadcast this type of programming. *See id.*

    C.  <u>605(e)(3)(C)(ii) Damages for Willful Violation</u>

In addition to the damages set forth above pursuant to 605(e)(3)(C)(i)(II), Section 605(e)(3)(C)(ii) grants the court discretion to award up to $100,000.00 in enhanced statutory damages per violation where the court determines that the violation was willful and committed for direct or indirect commercial advantage or private financial gain. Here, Plaintiff requests an additional award of $20,000 pursuant to 605(e)(3)(C)(ii) for the Defendants' willful violation committed for the direct or indirect commercial advantage or private financial gain.

In *ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit interpreted willful under the Statute as "disregard for the governing statute and an indifference to its requirements." *Id.* at 844 (quoting *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).

Defendants could not have "innocently" accessed the broadcast of the Event, and therefore, it is certain that Defendants specifically and willfully acted to illegally intercept the transmissions of the Event for Defendants' commercial advantage. *See Joe Hand Promotions, Inc. v. Malespin*, 2001 U.S. Dist. LEXIS 2037, at *9-10 (S.D.N.Y. Feb. 27, 2001) ("The respective defendants elected not to enter into contracts with plaintiff to obtain the transmission of the Program. Their only means of obtaining the Program, and to avoid paying the legal subscription rate for a commercial establishment, would be . . . (c) registering their respective commercial establishments as residential sites rather than commercial; and (d) ordering the Program for their respective residences and moving their residential cable boxes to their commercial establishments. The Court finds that employing any one of these means to defraud

plaintiff would be evidence of willfulness and would support an award of enhanced damages.").

Here, it is certain the Defendant took affirmative untoward actions such as those described above by the court in *Malespin* to bypass safeguards and security measures that protect proprietary cable/satellite programming program. Specifically, Defendant Eula Sheffield Neal utilized a residential satellite account to avoid commercial rates, and obtain the event at a comparatively nominal residential rate. *See* Exhibit B Responses 13 and 14.

As such, Defendants have committed a willful violation of the Communications Act. *See KingVision Pay-Per-View, Ltd. v. Valles*, EP-CA-179-DB, 2001 U.S. Dist. LEXIS 24268, at *9 (W.D. Tex. March 30, 2001) (Briones, J.) ("While Defendants may not have been well-versed in the statutory restrictions on the unauthorized interception of satellite transmissions, the Court finds that *there must have been some knowledge on the part of Defendants* that such interception could not be had for free.") (emphasis added).

After a willful violation has been established, a court must look to whether that willful violation was committed "for the purposes of direct or indirect commercial advantage or private financial gain". 47 U.S.C. § 605(e)(3)(C)(ii). As stated by Congress:

> [i]t is further intended that the term 'direct or indirect commercial advantage or private financial gain' be interpreted broadly by both the courts in deciding actions, and the Department of Justice in pursuing actions, under this section. Those who willfully violate subsection (a) and directly or indirectly enjoy commercial gain from those violations, may be reached.
>
> CABLE COMMUNICATIONS POLICY ACT, P.L. 98-549, 5 U.S. Cong. News, '84 Bd. Vol.-8, 4745, 4750.

Courts have generally held that the unauthorized broadcast of a pay-per-view program in a commercial establishment that is open to the public is willful and for financial advantage. *Am.Cablevision of Queens v. McGinn*, 817 F.Supp. 317, 320 (E.D.N.Y. 1993) (citing

*Cablevision Sys. Corp. v. Maxie's North Shore Deli Corp.*, No. 88CV 2834, 1991WL 58350 (E.D.N.Y. Mar. 20, 1991)); *See KingVision Pay-Per-View, Ltd. v. Hay Caramba Mexican Rest.*, Civil Action No.H-02-1311 (S.D. Tex. March 10, 2003 (Hoyt, J.) Memorandum and Order (Doc. 14) ("It is the Court's view that the defendant profited even if it did not charge a cover by selling food and beverages to the patrons who expected and did view the broadcast."); *Garden City Boxing Club Inc, v. Guzman*, 2005 U.S. Dist. Lexis 7954, at * 9 (S.D.N.Y. April 26, 2005) ("[The exhibition of the fight undoubtedly generated commercial profits for the defendant."); *Time Warner Cable of New York City v. Taco Rapido Restaurant*, 988 F. Supp. 107, 111-112 (E.D.N.Y. 1997) (showing event on multiple televisions is evidence of commercial advantage); *J&J Sports Productions, Inc. v. Perales*, Civil Action No. SA-08-CA-373-FB (W.D. Tex. Jan. 21, 2009) (Biery, J.) Order Granting Plaintiff's Motion for Summary Judgment and Final Judgment (event telecast to the patrons of defendant's establishment on three televisions, warranted imposition of additional damages pursuant to 47 U.S.C. §605(e)(3)(C)(ii)).

The Defendants, Defendants' agents, servants and/or employees intercepted and/or received or assisted in the interception and receipt of the live telecast of the Event. Defendants then broadcast or assisted in the broadcast of the Event to the patrons at Defendants' establishment for viewing therein. The Defendants exhibited the Event on one (1) television and one (1) projector screen to at least forty (40) patrons. The patrons at Defendants' Establishment purchased meals and/or drinks while viewing the Event. *See* Exhibit A(2).

The facts surrounding Defendants' exploitation of the Plaintiff's proprietary programming require the imposition of substantial statutory damages. With full deference to the Court's discretion, Plaintiff humbly requests that $20,000 should be awarded to Plaintiff

pursuant to Section 605(e)(3)(C)(ii). The following authority also supports an award of additional damages:

1. To deter future pirating of cable and satellite broadcasts. *See*, e.g., *KingVision Pay-Per-View, Ltd. v. Scott E.'s Pub, Inc.*, 146 F.Supp.2d 955, 959-60 (E.D. Wis. 2001) (discussing multipliers of three to eight (3 to 8) times the statutory damages as additional damages in order to deter future communication theft); *Garden City Boxing Club, Inc. v. Reyes*, No. 1:05-CV-00262 (S.D. Tex. January 12, 2006) (Tagle, J.) (discussing cases using multipliers from three to seven (3 to 7) times the statutory damages as additional damages).

2. To deter actions involving theft, fraud and conversion. *See Joe Hand Promotions, Inc. v. Tia Maria Mexican Restaurant & Cantina, Inc.*, 97 F. Supp. 2d 775, 778-779 (S.D. Tex. 2000) (Gilmore, J.) ("A suit for illegal reception and broadcast of a cable signal implicates several areas of the law [including fraud and theft]."); *ProStar v. Massachi*, 239 F.3d 669, 675 (5th Cir. 2001) (analogizes violation under Communications Act to conversion); see also *Green Industries, Inc. v. Brown*, Cause No. 05-98-01368-CV, 2001 Tex. App. LEXIS 1190, at *20 (Tex. App.—Dallas February 26, 2001) ("We believe the conversion shown by the evidence is precisely the kind of wrongdoing that punitive damages were meant to punish and deter.").

D. <u>Individual Liability under Title 47 U.S.C. § 605</u>

Individuals may be directly and/or vicariously liable under The Communications Act. Here, Defendant Eula Sheffield Neal is both directly and vicariously liable for the unauthorized exhibition of the Event at the Establishment.

An individual may be held liable in his personal capacity if he took any action or assisted in the actions constituting the underlying violation. *Don King Prods. v. Panaderia y Reposteria La Milagrosa*, 553 F. Supp. 2d 97, 100 (D.P.R. 2008). Here, Defendant Eula Sheffield Neal employed a residential satellite system registered to her home to unlawfully obtain the Event at the Estbalishment. Accordingy, she is directly liable for the violation.

For an individual defendant to be held vicariously liable in a Communications Act case, Plaintiff need only show that the defendant had the right and ability to supervise the infringing

11

activity and a direct financial benefit from the infringing activities. See *J & J Sports Productions, Inc. v. Ribeiro*, 562 F.Supp.2d 498, 501 (S.D.N.Y.2008) (quoting *J & J Sports Prods., Inc. v. Tonja Meyers*, et al., 2007 WL 2030288, *3 (S.D.N.Y.2007)); accord *Joe Hand Promotions, Inc. v. Blanchard*, 2010 WL 1838067, *3 (S.D.Ga.2010) (citing *J & J Sports Prods., Inc. v. Arboleda*, 2009 WL 3490859, *5 (M.D.Fla.2009)); *J & J Sports Prods., Inc. v. L & J Group, LLC*, 2010 WL 816719, *1 (D.Md.2010).

Here, Defendant Eula Sheffield Neal is the owner of War Bama By Chris, LLC and was a Managing Member of the LLC with a financial interest on date of the Event. Additionally, as discussed before, Defendant Eula Sheffield Neal benefited financially from the Establishment's sales on the date of the Event. Accordingly, Defendant Eula Sheffield Neal had a right and ability to supervise the infringing activity and a direct financial benefit from the infringing activities.

For the above reasons, Eula Sheffield Neal is individually liable for the underlying violations.

  E. <u>Plaintiff is Entitled to Costs and Attorneys' Fees under 605(e)(3)(B)(iii)</u>

Plaintiff requests an award of attorneys' fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). Pursuant to Section 605(e)(3)(B)(iii), the award of attorneys' fees is mandatory. Pursuant to Section 605(e)(3)(B)(iii), "[t]he Court…shall direct the recovery of full costs, including awarding reasonable attorneys' fees…" Accordingly, Plaintiff seeks actual costs incurred and an award of reasonable attorneys' fees for the prosecution of this action through the final Judgment requested.

**VI.  Prayer**

Plaintiff respectfully requests that the Court sign and cause to be entered a judgment for

Plaintiff against Defendants awarding Plaintiff:

(1) Statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II) from Defendants in the amount of $5,000.00;

(2) Additional damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) from Defendant in the amount of $20,000.00;

(3) Attorneys' fees and costs from Defendants;

(4) A permanent injunction that enjoins Defendants from ever intercepting or exhibiting an unauthorized program in violation of the Federal Communications Act;

(5) Costs and post-judgment interest at the highest lawful rate; and

(6) Such other and further relief to which Plaintiff is entitled.

Respectfully submitted,

Dated: April 30, 2015

/s/ *F. Page Gamble*
F. Page Gamble, Esq.
F. PAGE GAMBLE P.C.
300 Vestavia Parkway
Suite 2300
Birmingham, AL 35216
(T): (205) 795-2078
(E): page@gamblelaw.net

*Attorneys for Joe Hand Promotions, Inc.*

## CERTIFICATE OF SERVICE

    I hereby certify that on the 30th day of April, 2015, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Willie J. Huntley, Jr.
Huntley Law Firm
P.O. Box 370
Mobile, AL 36601-0370
(334) 434-0007
Email: huntfirm@bellsouth.net

*Attorney for the Defendants*

Dated: April 30, 2015                                       /s/ *F. Page Gamble*