# EXHIBIT A(1)

# DISTRIBUTORSHIP AGREEMENT

This Distributorship Agreement ("Agreement") is made and entered into effective as of December 1, 2007, by and between Zuffa, LLC d/b/a the Ultimate Fighting Championship® ("UFC") organized under the laws of the State of Nevada, with its principal place of business located at 2960 West Sahara, Suite 100, Las Vegas, Nevada 89102 ("ZUFFA"), and Joe Hand Promotions, Inc., a corporation chartered in the State of Pennsylvania with its principal place of business located at 407 E. Pennsylvania Boulevard, Feasterville, Pennsylvania 19053 ("JHP").

## RECITALS

WHEREAS, ZUFFA produces a variety of entertainment events, centered around live pay-per-view broadcasts of UFC events of mixed martial arts competitions; (hereinafter referred to as the "Event(s)")[1];

WHEREAS, JHP is engaged in the business of promoting and distributing commercial closed-circuit events;

WHEREAS, ZUFFA desires to show its Events on closed circuit television and JHP desires to promote and distribute all pay-per-view Events on closed circuit television in continental United States, Alaska, Hawaii, and Puerto Rico (the "Market Territory");

NOW THEREFORE, in consideration of the above and for other valuable consideration ZUFFA and JHP agree as follows:

## APPOINTMENT AND NATURE OF JHP

1.   **Appointment of JHP.**  Subject to the terms and conditions set forth in this Agreement, ZUFFA hereby grants JHP the exclusive right during the Term (defined below) to distribute the Events through the Distribution Channel (defined below) in the Market Territory, and JHP agrees fully and faithfully to perform and discharge the duties, obligations, and responsibilities provided for in this Agreement. ZUFFA represents that it has no other such agreements with any other distributor in the Market Territory. Permitting distribution of the Events by any other entity in the Market Territory by another distributor shall be considered a breach of this Agreement.

2.   **Distribution Channel.**  JHP shall be the exclusive distributor of commercial closed circuit television of the Events and may only distribute the Events through closed circuit television only to commercial outlets (the

---

[1] JHP understands that ZUFFA produces other UFC Events for broadcast of free television, such as Spike TV and potentially other television outlets, and JHP acknowledges and agrees that the rights described herein have no control over such other UFC television programming.

"Distribution Channel".) Unless prior written approval by ZUFFA is received, closed circuit television as defined herein does not include (i) closed circuit television locations or establishments located in Clark County, Nevada; (ii) closed circuit television locations or establishments located within thirty (30) miles of the Event site; and (iii) closed circuit located at any hotel-casino within a twenty (20) mile radius from the Event site or any affiliate hotel-casino of the Event host hotel-casino or Event host sponsor(s). Additionally, nothing herein shall in anyway limit or restrict ZUFFA's absolute rights to show the Events to residences, hotel rooms, dormitories, military base residential living, and all similar locations, via any and all means and modes of pay-per-view television, Internet, wireless, broadband, and all other means or modes now known or hereafter developed.

3.    *Authority and Capacity*.  JHP is an independent contractor, is not an agent of ZUFFA, and is not authorized to waive any right or to incur, assume or create any debt, obligation contract or release of any kind in the name of or on behalf of ZUFFA.  Nothing herein shall be construed so as to create an employer-employee, agency, partnership, or joint venture relationship between the parties hereto.

4.    *Scope of Event*.  JHP agrees that it will not electronically distribute directly or indirectly, through itself or others, any other non-boxing-affiliated fighting contests, including mixed-martial arts contests ("MMA"), in the Market Territory during the term of this Agreement or any extensions thereof. For purposes of this section, MMA shall be defined as unarmed combat involving the use of a combination of techniques from different disciplines of the martial arts, including, without limitation, grappling, kicking and striking. It is understood that this provision does not include World Wrestling Entertainment, Regulated boxing matches undertaken under the auspices of a recognized boxing federation and/or a state boxing commission shall not be considered a competing Event for the purpose of this Agreement.

5.    *Term*.  This Agreement shall become effective upon execution by JHP and ZUFFA and shall continue in effect for a term of two (2) years and one (1) month from the date of execution of this Agreement up to including December 31, 2009 (the "Term"). The parties agree that commencing six (6) months before the expiration of the Term they will negotiate exclusively for a period of thirty (30) days to discuss an extension. If at the end of the negotiation period, the parties cannot come to terms, then this Agreement will expire at the end of the Term and no other obligations will exist between the parties outside of the obligations set forth in paragraph 42 of this Agreement.

6.    *Estimated Number of Events*.  It is understood that the UFC estimates it will stage approximately ten (10) Events per year during the Term but both parties understand and agree that the actual number of Events could be more or less than ten (10).

## JHP OBLIGATIONS

**7.    *Best Efforts to Market*.** JHP shall exercise its best efforts to advertise, promote and market the Event and to promote the goodwill of ZUFFA and the market reputation of the Event. JHP shall conduct its activities related to the marketing of the Event in a professional manner and in accordance with the reasonable policies and procedures of ZUFFA and the terms of this Agreement.

    **7.1**    JHP shall utilize and distribute marketing and promotional materials, including but not limited to, UFC t-shirts, hats, etc. (collectively the "Promotional Materials") to all current and prospective customers. The Promotional Materials are to be exclusively bought (at cost) from ZUFFA or an agent designated by ZUFFA. The Promotional Materials shall be used solely as an incentive to maximize customer awareness of the UFC Event. In addition, JHP may approach ZUFFA with additional "out of the box" marketing opportunities not detailed herein. It is understood that JHP must obtain prior written approval for any use of this Promotional Funds for these purposes.

**8.    *Promotional Materials Accounting*.** It is agreed and understood that JHP shall hold ███████████████ from the Events in trust for ZUFFA (the "Promotional Funds"). JHP agrees to provide ZUFFA within thirty (30) days of the Event a detailed accounting statement of all Promotional Materials expenditures, including actual bank account statements. JHP shall utilize the Promotional Funds to purchase and distribute all Promotional Materials. It is understood by the parties that the sole intent in expending the Promotional Funds is to effectively promote all UFC Events under this Agreement. If during the Term, ZUFFA determines, at its sole discretion, that JHP mishandles the Promotional Funds in any manner, ZUFFA, upon written notice, may demand liquidation and any remaining balance must be paid to ZUFFA within three (3) business days. Additionally, upon expiration of the Term any remaining balance of the Promotional Funds must be paid to ZUFFA. It is further understood that JHP is responsible for all use taxes derived from the purchase of the Promotional Materials, however, said use taxes may be reimbursed from the Promotional Funds upon written proof to ZUFFA that payment has been made.

**9.    *Advertising*.** JHP shall advertise the Event in a manner that will develop customer interest and confidence in ZUFFA and in the Event. JHP shall be entitled, during the term of this distributorship created by this Agreement to advertise and hold itself out as an authorized distributor of the Event through the Distribution Channel. JHP shall submit examples of all proposed advertisements and other promotional materials of the Event to ZUFFA for inspection and JHP shall not use any such advertisements or promotional materials without having received the prior written consent of ZUFFA to do so. JHP shall not, pursuant to

this Agreement or otherwise, have or acquire any right, title or interest in or to ZUFFA's Trademarks.

9.1     JHP shall prepare all documentation necessary to meet the legal requirements of the closed-circuit distribution, including but not limited to: (i) preparation of licenses and technical documentation for each location, (ii) distribution of marketing and promotional materials, and (iii) collection of all funds and preparation of sales and revenue reports in a timely fashion.

9.2     JHP shall provide direct marketing, such as mailing pieces and other forms of advertising to create awareness of the program. Such direct marketing shall comply with all Federal, State and local laws.

9.3     With approval by ZUFFA, JHP may utilize the services of other regional closed-circuit distributors to maximize the sales and distribution efforts on this program. Any such company shall be bound under the same terms and conditions listed in any contract between JHP and ZUFFA. ZUFFA shall not be subject to any double commissions and JHP agrees to be solely responsible for any and all commissions, fees and other amounts that may be due to any sub-distributors. JHP shall indemnify, defend and hold ZUFFA, its officers, directors, members, employees and agents harmless from and against all claims of other regional closed-circuit distributors.

10.    *Security;* JHP shall make a concentrated effort to discourage theft of service. Upon written demand, JHP shall provide ZUFFA with a complete list of verifiable customers. In an effort to protect the closed-circuit broadcast rights, JHP will coordinate and finance its own piracy program. Net License Fees generated through piracy settlements, shall be split under the same terms as the licensing revenue split as of the date of the Event.

11.    *Event Casino Fees.* JHP agrees that any and all proposed fees for viewing of any Events at any hotel-casino in the Market Territory must be pre-approved in writing by ZUFFA upon five (5) business days written notice to ZUFFA.

## ZUFFA OBLIGATIONS

12.    ZUFFA hereby grants JHP permission to enter into agreements with DirecTV, Dish Network, other DBS satellite providers and individual cable system operators, which shall act as authorization sources for their commercial customers utilizing that technology to broadcast the event. If necessary, JHP shall ask ZUFFA and ZUFFA shall cooperate to assist in its negotiations with these digital authorization sources in order to reach an agreement on terms for

authorizing the requested commercial account. JHP shall use its best efforts to obtain the most favorable terms and fees from all such providers.

## FINANCIAL

13.    As compensation for these exclusive rights, JHP shall pay ZUFFA the following for each closed-circuit distributed Event:



13.1    JHP shall pay ZUFFA ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆and

13.2    JHP shall pay ZUFFA ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Net License Fees are defined as gross license fees (not including the carrier authorization fee), less actual credit card fees ▆▆▆▆▆▆ and any miscellaneous event license taxes.

By way of example only, if Net License Fees for an Event are ▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆ pursuant to 13.1, and ▆▆▆▆▆▆▆▆▆ pursuant to 13.2, for a total payment to ZUFFA ▆▆▆▆

JHP shall provide the Net License Fees within thirty (30) days after each Event and, if applicable, on a rolling basis within thirty (30) days of receipt. JHP agrees that all revenues associated with ZUFFA will be held in a separate trust bank account for ZUFFA.

14.    *Advance.* Intentionally Deleted.

## INTELLECTUAL PROPERTY AND INDEMNIFICATION

15.    *Proprietary Rights.* All patents and patent applications, trademarks, servicemarks, copyrights, tradenames and other proprietary rights in and with respect to the Event and Promotional Materials are and will remain exclusively the property of ZUFFA. During the term of this Agreement, JHP may indicate that it is an authorized distributor of the Event for ZUFFA and may within the direction of ZUFFA use the trademarks, servicemarks, logos, symbols and tradenames of ZUFFA applicable to the Event in connection with JHP's advertising, promotion, distribution and sale of the Event in the Market Territory in accordance with the terms of this Agreement;

15.1    JHP shall neither acquire nor assert any intellectual property right, title or interest in or directly or indirectly obtain or attempt to obtain at any time any right, title or interest by registration or otherwise in or to the tradenames, trademarks, symbols or designations owned or used by ZUFFA. Any and all work by JHP pertaining in any way to this Agreement is expressly deemed and agreed to be work-for-hire and all rights belong to ZUFFA. JHP agrees that any and work by JHP and all intellectual property, including without limitation, concepts, ideas, copy, graphics, compilations, sketches, artwork, electronic files, video, film, photography, photograph layouts, any and all derivative works, and other materials related to the Events and will become the sole and exclusive property of ZUFFA throughout the world in perpetuity. ZUFFA may use any and all materials generated as it sees fit without any additional compensation; however, ZUFFA is not under any obligation to use such materials. To the extent that any of the materials may not, by operation of law or otherwise, be a work made for hire in accordance with the terms of this Agreement, JHP hereby irrevocably assigns and transfers to ZUFFA all right, title and interest in and to any registrations and copyrights, and ZUFFA shall have the right to obtain and hold in its own name any copyrights, registrations and other proprietary rights which may be available. All reproduction rights are retained by ZUFFA and any and all work by JHP may not be reproduced in any form without written consent from ZUFFA. JHP hereby assigns to ZUFFA all JHP's worldwide right, title and interest in ZUFFA's trademarks, servicemarks, logos, symbols and tradenames, and in any derivation, adaptation, variation or name thereof. Without limiting the foregoing, JHP hereby assigns to ZUFFA all JHP's worldwide right, title and interest in any material objects consisting of or incorporating any drawings, paintings, or other derivations, adaptations, compilations, collective works, variations or names relating to Event or the ZUFFA;

15.2    Whenever JHP is permitted to employ any trademark or servicemark of    ZUFFA in any form on printed materials, JHP shall place immediately after and    slightly above the use of the trademark, "®" or "TM" and indicate that it is the    trademark or registered trademark of ZUFFA. Such marks should be placed as    follows:

> Ultimate Fighting Championship®
> UFC ®
> Ultimate Fighting®
> The Octagon™

16.    *Unauthorized Use.* JHP agrees to give ZUFFA prompt written notice of any unlicensed use by third parties of ZUFFA's trademarks or tradenames and that JHP will not, without ZUFFA's written consent, bring or cause to be brought any criminal prosecution, lawsuit, or administrative action for infringement, interference with or violation of any rights to trademarks or tradenames. JHP

agrees to cooperate with ZUFFA, and, if necessary, to be named by ZUFFA as a sole complainant or co-complainant in any action against an infringer of the ZUFFA's trademarks or tradenames, and notwithstanding any right of JHP to recover same, legal or otherwise, JHP agrees to pay ZUFFA, and hereby waives all claims to, all damages or other monetary relief recovered in such action by reason of a judgment or settlement whether or not such damages or other monetary relief, or any part thereof, represent or are intended to represent injury sustained by JHP as a distributor hereunder; in any such action against infringer, ZUFFA agrees to reimburse JHP for reasonable expenses incurred at ZUFFA's request, including reasonable attorney's fees if ZUFFA has requested JHP to retain separate counsel, or has approved the retention of separate counsel. JHP shall have the right but not the obligation to assert any independent claims it may have against an alleged infringer and, in such case, any damages awarded to JHP on its independent claims shall be the sole property of JHP. To the extent that independent claims are asserted but no allocation of damages is made then all such damages shall be allocated as though they were revenue.

17.    *Confidentiality.*   JHP agrees to keep the terms and conditions of this Agreement confidential, and JHP shall not disclose such terms and conditions to any third party without obtaining ZUFFA's prior written consent; provided however, that this Agreement may be disclosed on a need-to-know basis to JHP's attorneys and accountants who agree to be bound by this confidentiality provision or by Court order or by subpoena. ZUFFA hereby consents to JHP's disclosure of information of a financial nature in this Agreement to its auditors and to financial institutions in the ordinary course of business. In addition, JHP may have access to information concerning ZUFFA's business and operations, and/or other matters relating to ZUFFA's creations or business plans, which information may not be accessible or known to the general public. JHP agrees to keep any and such information strictly confidential and to not to use or disclose such information to any third party without obtaining ZUFFA's prior written consent.

## INDEMNIFICATION

18.    ·ZUFFA shall indemnify, defend and hold JHP, its officers, directors, employees and agents harmless from and against all claims that any Event infringes any patent, trademark, servicemark, tradename or other intellectual property rights in the Market Territory. ZUFFA shall also indemnify and hold JHP harmless for any claim, fine or penalty that may arise out of or involve the content of any ZUFFA event, including but not limited to charges of obscenity or profanity or any of the violation of FCC rules or regulations that may apply. ZUFFA shall assume the defense of any suit based on any such claim of infringement brought against JHP specifically relating to the Event by retaining at ZUFFA's expense counsel to represent JHP. ZUFFA shall pay any damages assessed against or

otherwise payable by JHP as a result of the final disposition of any such suit relating to the Event.

19.    ZUFFA's indemnity of JHP hereunder is conditioned upon: (a) JHP giving prompt written notice to ZUFFA of any such claim or of the commencement of any such suit, or threats thereof after JHP has received notice of same; (b) ZUFFA having full opportunity to conduct the defense thereof; and, (c) the co-operation of JHP in the defense of such claim. JHP shall not incur any defense costs without ZUFFA's prior written consent.

20.    JHP shall indemnify, defend and hold ZUFFA, its affiliates, members, parents, successors, officers, directors, employees and agents, harmless during and after the term hereof against all claims, demands, suits, judgments, losses, liabilities (including settlements entered into in good faith with JHP's consent, not to be unreasonably withheld) and expenses of any nature (including reasonable attorneys' fees) arising out of JHP's activities under this Agreement, including but not limited to, any actual or alleged: (a) negligent acts or omissions on JHP's part; (b) personal injury; (c) infringement of any rights, other than intellectual property rights of the Event, of any other person by the manufacture, sale, possession or use of the Event; (d) breach on JHP's part of any covenant, representation or warranty contained in the Agreement; or, (e) failure of JHP to comply with applicable Laws, including but not limited to, violations of antitrust laws. JHP shall pay any damages assessed against or otherwise payable by ZUFFA as a result of the final disposition of any such suit.

21.    JHP's indemnity of ZUFFA hereunder is conditioned upon: (a) ZUFFA giving prompt written notice to JHP of any such claim or commencement of any such suit, or threats thereof after ZUFFA has received notice of same; (b) JHP having full opportunity to conduct the defense thereof; and, (c) the co-operation of ZUFFA in the defense of such claim. ZUFFA shall not incur any defense costs without JHP's prior written consent.

## TERMINATION

22.    JHP and ZUFFA may terminate this Agreement at any time by giving each other at least sixty (60) days written notice of the intention to terminate. No damages or other compensation shall be payable to either party on account of such termination excepting, however, that any revenue then due shall be distributed in accordance with this Agreement. Any event scheduled to take place within sixty (60) days of the notice of termination shall be distributed and broadcast in accordance with this Agreement and all revenues generated thereby shall be paid pursuant to this Agreement.

23.    ZUFFA may also terminate this Agreement, by giving JHP at least sixty (60) days written notice of the intention to terminate, in the event of any of the following occurrences:

23.1    Any act of dishonesty or violation of laws by JHP arising in relation to this Agreement, which could affect JHP's ability to perform hereunder or which, in the sole judgment of ZUFFA, could be detrimental to ZUFFA or its business;

23.2    The unauthorized release to third parties by JHP proprietary, confidential or commercially sensitive information, which refers to or relates to ZUFFA or the Event(s);

23.3    Changes in laws or governmental policies making it impractical for the Event to be produced or for JHP to act as a distributor for the Event;

23.4    The cessation of business activities by JHP;

(a) The insolvency or admission by JHP of its inability to pay its debts as they mature,
(b) the filing of a petition for bankruptcy or similar proceedings by or against JHP or,
(c) a general assignment for the benefit of JHP's creditors or similar acts;

23.5    Any material breach by JHP of any term or condition set forth in this Agreement other than those set forth above, provided, however, that for any such breach, JHP shall not have cured such breach after written notice has been given to JHP by ZUFFA; or

23.6    The failure of JHP to cure to ZUFFA's satisfaction any material breach by JHP of any term or condition of this Agreement (other than those set forth immediately above) within thirty (30) days written notice of such breach to JHP.

24.    *Effect of Termination or Expiration.* Upon termination of the Agreement:

24.1    JHP shall discontinue the use of any and all ZUFFA's intellectual property, including, but not limited to tradenames, trademarks, symbols or designations associated with ZUFFA or the Event and shall immediately discontinue designating itself as an authorized distributor of ZUFFA.

24.2    JHP shall immediately return to ZUFFA all items of proprietary or confidential information delivered to JHP hereunder.

25. **Remedies.** Neither the right to terminate nor the actual termination of this Agreement upon breach of any provision hereof shall limit either party from pursuing whatever relief it deems appropriate for such breach, in accordance with, and subject to any limitations contained herein.

26. **Regulatory Termination.** In the event that a Regulatory Problem (as hereinafter defined) arises at any time as a result of this Agreement or the underlying relationship between the ZUFFA and JHP (or any of their affiliates, members or subsidiaries), ZUFFA shall take all action deemed reasonably necessary by its officers, members, managers or advisors, including, without limitation, amending or terminating this Agreement, in order to eliminate such Regulatory Problem. For purposes of this Section, "Regulatory Problem" means any circumstances such that ZUFFA's continued affiliation or contractual relationship with JHP (or any affiliate thereof), is deemed likely, in the reasonable judgment of ZUFFA, based on a verbal or written inquiry or verifiable information or information received from any gaming or athletic authority, to preclude or materially delay, impede, jeopardize or impair the ability of ZUFFA or any of its officers, owners, members, managers, employees or affiliates to obtain or retain any gaming or athletic license, or such as may result in the imposition of materially burdensome terms and conditions on any such gaming or athletic license, or such as could subject ZUFFA or any of its officers, owners, members, managers, employees or affiliates to any disciplinary proceedings by any gaming or athletic authority, or such as would constitute a violation of the gaming or athletic laws.

## FORCE MAJEURE AND COMPLIANCE WITH LAWS

27. **Force Majeure.** If either party is delayed, or interrupted in, or prevented from the performance of its obligations hereunder by reason of an act of God, fire, flood, war, public disaster, strikes or labor difficulties, governmental enactment, regulation or order, or any other cause beyond its control, and if such party has given the other party prompt notice hereof and, on request, such confirmatory documentation as the other party may reasonably request and has in good faith kept the other party apprised of when the delay, interruption or prevention is expected to be resolved, the time for the performance of the party's obligations shall thereupon be extended for a period equal to the duration of the contingency that occasioned the delay, interruption or prevention, but not exceeding sixty (60) days unless otherwise mutually agreed. If the force majeure condition continues for more than sixty (60) days, either party may terminate this Agreement upon written notice to the other party.

28. **Compliance with United States Laws and Regulations.** It is understood that imports and sales of the Event by JHP may require approvals pursuant to and in compliance with federal and state laws and regulations of the

Market Territory. In order to assure that imports and sales of the Event made pursuant to this Agreement do not violate any applicable laws or regulations, the parties agree as follows:

28.1    JHP shall promptly provide to ZUFFA information on laws, rules, and regulations of the Territory or of any state or political sub-division thereof insofar as such laws, rules, or regulations affect or are likely to affect (i) JHP's rights to distribute or sell the Event; or (ii) ZUFFA's rights under this Agreement.

28.2    JHP shall at all times comply with, and shall require its dealers at all times to comply with, all applicable laws, rules and regulations of the Territory or of any State or political subdivision thereof that affect or impact this Agreement and each party's rights and obligations hereunder or that affect or regulate the manufacture of the Event or their importation into the Market Territory.

## GENERAL PROVISIONS

29.    *Notices.*    All notices, demands, requests, consents, approvals or other communications (collectively "Notices") required or permitted to be given hereunder or which are given with respect to this Agreement shall be in writing, addressed to the party to be served at the address set forth on page 1 of this Agreement with a copy to Kirk D. Hendrick, COO, ZUFFA, and may be served personally or by depositing the same address as herein provided (unless and until otherwise notified), postage prepaid in the United States Mail. Such Notice shall be deemed served upon personally delivery or upon the date of mailing; provided however, that ZUFFA shall be deemed to have been served with a notice or request for approval of materials under this Agreement only under ZUFFA's actual receipt of the request.

30.    *Counterpart.*    This Agreement may be executed in counterparts, each shall be deemed an original, but all of which taken together shall constitute but one and the same instrument.

31.    *Governing Law; Forum Selection; Consent to Jurisdiction.*    This Agreement and its incorporated Exhibits have been delivered at and shall be deemed to have been made and entered into in Las Vegas, Nevada. Accordingly, the rights and liabilities of the parties shall be determined in accordance with the laws of the State of Nevada, without regard to its principles of conflicts of laws. The parties agree that the exclusive jurisdiction and venue for the resolution of any dispute arising from or relating to this Agreement shall lie in the United States District Court, District of Nevada, sitting in Las Vegas, Nevada. Each party irrevocably consents to the service of process in any such dispute if served in accordance with the notice provisions contained herein.

32.   *Remedies Cumulative.* Unless otherwise provided for under this Agreement, all rights of termination or cancellation, or other remedies set forth in this Agreement, are cumulative and are not intended to be exclusive of other remedies to which the injured party may be entitled by law or equity in case of any breach or threatened breach by the other party of any provision in this Agreement. Use of one or more remedies shall not bar use of any other remedy for the purpose of enforcing any provision of this Agreement. JHP's sole remedy for breach of this Agreement by ZUFFA shall be an action for money damages and in no event shall JHP be entitled to injunctive or other equitable relief. However, ZUFFA may seek equitable relief against JHP under this Agreement, including but not limited to injunctive relief.

33.   *Entire Agreement.* The terms of this Agreement are intended by the parties as a final expression of their Agreement with respect to such terms as are included in this Agreement and may not be contradicted by evidence of any prior contemporaneous agreement. The parties further intend that this Agreement constitutes the complete and exclusive statement of its terms and than no extrinsic evidence whatsoever may be introduced in any judicial proceeding, if any, involving this Agreement.

34.   *Modification and Amendments.* This Agreement may not be modified, changed or supplemented, nor may any obligations hereunder be waived or extensions of time for performance be granted, except by written instrument signed by the party to be charged or by its duly authorized agent or as otherwise expressly permitted herein.

35.   *Waivers and Extensions.* No waiver or breach of any Agreement or provision herein contained shall be deemed a waiver of any preceding or succeeding breach thereof or of any other agreement or provision herein contained. No extension of time for performance of any obligations or acts shall be deemed an extension of time for performance of any other obligations or acts.

36.   *Titles and Headings.* Titles and headings of sections of this Agreement are for convenience of reference only and shall not affect the construction of any provisions of this Agreement.

37.   *Schedules.* Each of the Schedules referred to herein and attached hereto is an integral part of this Agreement and is incorporated herein by reference.

38.   *Consents and Approvals.* Whenever consent or approval of either party is provided for in this Agreement, such consent or approval shall be given in writing to the requesting party.

39.   *Further Assurances.* The parties agree to do such further acts and things and to execute and deliver such additional agreements and instruments as

the other may reasonably require to consummate, evidence or confirm the agreements contained herein in the manner contemplated hereby.

**40.    *Assignments and Sublicenses.*** The services to be provided by JHP hereunder are peculiar and special in nature. Therefore, neither JHP nor ZUFFA shall assign this Agreement in whole or in part without the prior written consent of the other party. Notwithstanding the foregoing, either ZUFFA or JHP may assign this Agreement or any of its rights hereunder, without the other's consent, to any entity with which it may be merged or consolidated or which acquires all or substantially all of its assets, provided that such an entity agrees in writing to assume all applicable obligations under this Agreement. Any purported assignment or transfer by either party of any of its rights or obligations under this Agreement other than in accordance with the provisions of this Section shall be void, unless otherwise approved by the parties. JHP agrees it shall maintain a consistent level of integrity, quality and exposure level of the Event during the entire Term of this Agreement to ZUFFA's satisfaction. However, either party shall have the right to assign this Agreement to a subsidiary. This Agreement will bind and inure to the benefit of the respective successors and permitted assigns of JHP or ZUFFA.

**41.    *Partial Validity.*** If any provision of this Agreement is found to be invalid by any court, the invalidity of such provisions shall not affect the validity of the remaining provisions hereof.

**42.    *Survivability.*** The respective obligations of the parties under this Agreement, which by their nature would continue beyond the termination, cancellation or expiration of this Agreement, including but not limited to indemnification, audit rights and piracy settlement payments, shall survive termination, cancellation or expiration of this Agreement.

**43.    *Audit Rights.*** JHP shall keep full, clear and accurate books of account and records with respect to all financial terms, including and not limited to gross license fees, Net License Fees, authorization fees, credit card fees and any miscellaneous event license taxes pursuant to this Agreement. The books and records shall be maintained in such a manner that the quarterly reports required herein shall be readily verifiable. ZUFFA, and ZUFFA's designated agent (designated in writing by the ZUFFA), shall have the right to examine and audit JHP's records at JHP's business premises upon reasonable prior notice to JHP and during normal business hours. ZUFFA shall be entitled to examine and audit JHP's records once in any calendar year unless a prior audit by ZUFFA in that year revealed a deficiency. If ZUFFA's audit reveals an overpayment in any payments due to ZUFFA pursuant to this Agreement, such amounts will be credited against the quarterly payments next due. If ZUFFA's audit reveals a deficiency in any payment due under this Agreement, JHP shall remit the amount of the deficiency within 10 days after demand therefore together with interest at a rate of ███████████████████. If any such audit shows a deficiency of

greater than ▓▓▓▓▓▓▓▓▓ with respect to the amounts that should have been paid to ZUFFA, the reasonable cost of such audit shall be paid by JHP. After twelve (12) months from the date of any quarterly report and corresponding payment, that quarterly report shall be deemed final and binding and ZUFFA shall have no further right to contest the report or payment of ZUFFA's revenue share as specified therein. Notwithstanding the foregoing, if JHP disagrees with the results of an audit by ZUFFA, JHP and the ZUFFA shall mutually agree upon a third party accounting firm to review ZUFFA's audit and the results thereof shall be binding on ZUFFA and JHP.

**44.     Corporate Authority.** Each individual executing this Agreement on behalf of any corporation which is a party to this Agreement represents and warrants that he or she is duly authorized to execute and deliver this Agreement on behalf of said corporation, in accordance with a duly adopted resolution of the Board of Directors of said corporation, and that this Agreement is binding upon said corporation on accordance with its terms.

**45.     Language.** This Agreement has been negotiated and written in English. The English text shall be the only controlling text.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the first written above.

"ZUFFA, LLC"

By: _____

Printed Name:  KIRK D. HENDRICK
                        CHIEF OPERATING OFFICER

Title: _____

"JHP"

By: _____

Printed Name: JOE HAND JR.

Title: President

## ADDENDUM #4 TO DISTRIBUTORSHIP AGREEMENT

THIS ADDENDUM #4 TO THE DISTRIBUTORSHIP AGREEMENT (the "Addendum #4") is made and entered into effective January 1, 2013 and in reference to and incorporated by reference into the existing Distributorship Agreement dated December 1, 2007, as amended, (the "Agreement") by and between ZUFFA, LLC dba Ultimate Fighting Championship® ("UFC"), 2960 W Sahara Avenue, Las Vegas, Nevada 89102 ("ZUFFA") and JOE HAND PROMOTIONS, INC., 407 Pennsylvania Blvd., Feasterville, PA 19053 ("JHP"), both of whom are referred to collectively as the "Parties".

### RECITALS

WHEREAS, the Parties entered into a Distributorship Agreement effective as of December 1, 2007 (the "Agreement"), the terms of which are incorporated herein by reference;

NOW THEREFORE, in consideration of the foregoing and the additional promises and consideration set forth herein, and intending to be legally bound, ZUFFA and JHP agree to modify the Agreement as provided for in paragraph 34 ("Modifications and Amendments") as follows:

EXTENSION OF TERM. The term of the Agreement is hereby extended up to and including December 31, 2015. The period from January 1, 2013 to December 31, 2015 shall be referred to as the Extended Term.



BONUS PAYMENT. JHP will be paid the following bonuses during the Extended Term on a per event basis (if achieved):



If additional commercial markets (e.g., offices) are added during the Extended Term, the parties will re-visit these bonus thresholds.



**PROMOTIONAL MATERIALS ACCOUNTING.** Promotional Funds previously set aside and used for promotional materials will be paid to ZUFFA. ZUFFA will be responsible for all promotional materials during the Extended Term.

**EFFECT ON OTHER PROVISIONS.** All other provisions of the Agreement not modified by this Addendum remain in full force and effect.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement effective as of the first date written above.

ZUFFA, LLC

By: _____

Printed Name: _The Lawrence Epstein_

Title: _EVP + COO_

JHP

By: _____

Printed Name: _Joe Hand Jr_

Title: _PRESIDENT_