IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC.         ) | |
|     Plaintiff,                                     ) | |
|                                                              ) | |
| v.                                                         ) | CIVIL ACTION NO. 14-348-KD-C |
|                                                              ) | |
| EULA SHEFFIELD NEAL,                  ) | |
| CHRISTOPHER SHERMAN             ) | |
| WAR BAMA BY CHRIS, L.L.C.,        ) | |
| d/b/a WAR BAMA                             ) | |
|     Defendants.                                ) | |

**ORDER**

This matter is before the Court on Plaintiff's Partial Motion for Summary Judgment (Doc. 29), and the Defendants'[1] Response (Docs. 35-36). Upon due consideration of the parties' briefs and evidentiary submissions, Plaintiff's motion as to Defendant War Bama By Chris LLC d/b/a War Bama's liability on Count One is **GRANTED**. Plaintiff's motion as to Defendant Eula Sheffield Neal's liability on Count One is **DENIED**. The issue of damages is **CARRIED TO TRIAL**.

    **I.**    **Background**

Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") is a Pennsylvania corporation engaged in the closed circuit distribution "of sports and entertainment programming." distributes sports and entertainment programming to commercial establishments." (Docs. 1 at 6 and 29-3 at 2). "[Joe Hand] purchased and retained the commercial exhibition rights to the 'UFC 148: Silva v. Sonnen II' broadcast including all undercard bouts and the main prizefight, broadcasted on July 7, 2012." (Docs. 29-3 at ¶3, 29-4). This Court has subject matter jurisdiction under 28 U.S.C. §1331 (federal question), as this action was brought pursuant to 47 U.S.C. §§ 553, 605.

---

[1] "Defendants" refers to Eula Sheffield Neal and War Bama by Chris LLC d/b/a War Bama. Plaintiff did not move for summary judgment against Defendant Christopher Sherman.

On July 24, 2014, Plaintiff Joe Hand commenced this action by filing suit against War Bama by Chris d/b/a War Bama LLC ("War Bama"), Eula Sheffield Neal ("Neal"), and Christopher Sherman ("Sherman") alleging violations of 47 U.S.C. §§553, 605, based on the unauthorized broadcast of UFC 148 at the War Bama. (Doc. 1). War Bama is an establishment located in Silas, Alabama. (Doc. 36 at 1). Neal and Sherman are the only members of War Bama, with Neal owning 60% and Sherman owning 40%. (Id.).[2]

Neal and War Bama answered the complaint on November 3, 2014. (Doc. 19). On April 30, 2015, Joe Hand timely filed its motion for partial summary judgment. (Doc. 29). Though not styled as such, Joe Hand's motion is partial due to the fact that it has not been brought against all defendants in this matter.

On October 6, 2014, Joe Hand made an application for entry of default against Sherman and on October 8, 2014, the Clerk entered a default against Sherman. (Docs. 14,15). Plaintiff has not filed a motion for entry of default judgment.[3] Defendants Neal and War Bama responded to Joe Hand's motion for partial summary judgment on June 2, 2015 and the matter is ripe for consideration. (Docs. 35-36).

---

[2] The record specifies Sherman's percentage of interest but does indicate that Neal and Sheffield were the only members of the LLC. The Court concludes Neal owned a 60% interest.

[3] The Federal Rules of Civil Procedure establish a two-part process for obtaining a default judgment. Fed.R.Civ.P. 55. If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). After default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation" the clerk must enter default judgment. Fed.R.Civ.P. 55(b)(1). In all other circumstances, such as here, "the party must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2). It appears to the Court that the parties are under the impression that default judgment has been entered against Sherman. A clerk's entry of default and a default judgment are not the same thing. Joe Hand filed for summary judgment against Defendants War Bama Neal, but not against Sherman. (Doc. 29). In opposition to the motion for summary judgment, Defendants Neal and War Bama state, "[The Plaintiff] has moved for a default judgment against Sherman. Sherman's failure to answer results in an admission that 'Sherman knowingly and willfully intercepted the programming and offered it to patrons of the establishment for private financial gain or commercial advantage.' The default also confirms that the exhibition of the program by Sherman was "willful for purposes of direct or indirect commercial advantage or private financial gain and with the intent (sic) willfully defraud [the Plaintiff] of revenue.'" (Doc. 36 at 4).

## II.     Findings of Fact[4]

As noted by the Defendants, "The UFC event was [] broadcast at the War Bama Club in Silas, Alabama. The UFC event was not authorized for broadcast at the War Bama." (Doc. 36 at 1). UFC 148 was obtained via a residential satellite account registered to Neal at her home address, which was in use at the War Bama. (Docs. 29-7 at 7-8 and 36-1 at 2).

On July 7, 2012, auditor Walter Childress went to the War Bama while UFC 148 was being broadcast. (Doc. 29-5). As evidenced by Childress' affidavit, UFC 148 was displayed via a projector screen and a television at the establishment. (Doc. 29-5). Childress paid a $10.00 cover charge to enter the War Bama. (Id. at 2). While there, Childress took three head counts of patrons present during the exhibition of UFC 148. The first, second, and third head counts were 6, 32, and 40, respectively. (Id.).

## III.    Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[4] At the summary judgment stage, the facts are taken in the light most favorable to the non-movant. *Tipton v. Bergrohr GMBH–Siegen, 965 F.2d 994, 998–999 (11th Cir. 1992)*. The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000)*.

>   *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
>   *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
>   *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter … the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-999 (11th Cir. 1992).

IV.  **Analysis**

    A.  **Defendants' Motion to Strike**

Defendants have moved to strike the affidavits of Joe Hand, Jr. and Walter Childress (Docs. 29-3 and 29-5, respectively) based on "a lack of personal knowledge, facts, competence, relevance and conclusory allegations and statements." (Doc. 34 at 1). Joe Hand, Jr. is the

president of the Plaintiff Joe Hand Promotions. (Doc. 29-3). The Court finds Mr. Hand is competent to testify concerning about Joe Hand's business given his position as its president. Childress' affidavit was based upon his personal visit to the War Bama on the date of UFC 148. To the extent either affidavit contained any irrelevant information, conclusory allegations, or inadmissible evidence, such was not considered by the Court. Thus, the motion to strike is **DENIED**.

### B.  Liability Under 47 U.S.C. § 553

Joe Hand brought suit against Neal individually, as well as the establishment itself for exhibiting UFC 148 to War Bama patrons without Joe Hand's authorization. Joe Hand seeks relief under two different statutory provisions—47 U.S.C. § 605 (The Communications Act of 1934), or, alternatively, 47 U.S.C. § 553 (The Cable & Television Consumer Protection and Competition Act of 1992).[5] Section 605 of the Communications Act provides as follows:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). This section "prohibits the unauthorized third party reception of satellite transmissions intended for fee-paying subscribers." *Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n, 881 F.2d 983, 988 (11th Cir. 1989)*, *vacated on other grounds by*

---

[5] Plaintiff can only recover under one statute. *See, e.g., J & J Sports Prods., Inc. v. Blackwell, 2009 WL 2171897, at *2 (M.D.Ala. July 21, 2009)*; *J & J Sports Prods., Inc. v. Guzman, 2009 WL 1034218, at *2 (N.D.Cal. Apr.16, 2009)*.

895 F.2d 711 (11th Cir. 1990). "Satellite signals are considered 'radio communication.'" *J & J Sports Prod., Inc. v. Allen, 2011 WL 941502, *2 at n. 3 (N.D. Ga. Mar. 14, 2011)*.

Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by the cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). As the Northern District of Georgia has recently explained:

> There is a split among the circuits as to what activity each section covers and how to reconcile potential overlap in the provisions.[6] Some circuits have held that § 605 applies to satellite transmissions *and* cable programming transmitted over a cable network. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123 (2d Cir.1996) (holding that both § 605 and § 553 cover interception of cable programming transmitted over a cable network). Other circuits have held that only § 553 covers cable programming transmitted over a cable network. *See TRK Cable Co. v. Cable City Corp., 267 F.3d 196 (3d Cir.2001)* (" § 605 encompasses the interception of satellite transmissions 'to the extent reception or interception occurs prior or not in connection with, distribution of the service over a cable system,' and no more. Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605."); United States v. Norris, 88 F.3d 462, 466 (7th Cir.1996) (affirming district court's finding that "where cable programming is broadcast through the air and then retransmitted by a local cable company over a cable network, § 605 should govern the interception of the satellite or radio transmission through the air, while § 553(a) should govern the interception of the retransmission over a cable network"). The Court is persuaded by the Third and Seventh Circuits' interpretation of § 605's plain language, and finds that § 605 prohibits commercial establishments from intercepting and broadcasting satellite programming, while § 553 addresses interceptions that occur through a cable network. See Scientific–Atlanta, 1997 WL 33543688, at *14; CSC Holdings, Inc. v. Kimtron, Inc., 47 F.Supp.2d 1361, 1364 (S.D.Fla.1999).

*J & J Sports Prods., Inc. v. Indigo Bar & Lounge, Inc.*, 2014 WL 1347065, at *2 (N.D. Ga. Apr. 3, 2014).

The Court finds this reasoning persuasive. A review of the Record indicates that the Defendants received and broadcast the fight via satellite, not cable. Further, there is no evidence whatsoever that cable was employed by the Defendants in obtaining the broadcast. Thus, the

---

[6] The Eleventh Circuit has not addressed this issue.

Defendants are liable under § 605 rather than § 553. Accordingly, Count Two, brought under § 553, is **DISMISSED**.[7]

      **C.**      **Liability Under 47 U.S.C. § 605**

Liability under § 605 "does not require a knowing violation." *Kingvision Pay Per View, Ltd. v. Williams,* 1 F.Supp.2d 1481, 1484 (S.D.Ga.1998). To establish a violation of § 605, a plaintiff "must establish that (1) the Defendants intercepted the program, (2) Defendants did not pay for the right to receive the transmission, and (3) Defendants displayed the program to patrons of their commercial establishment." *Zuffa, LLC v. Al–Shaikh*, 2011 WL 1539878, at *4 (S.D.Ala. Apr.21, 2011) (citing *J & J Sports Prods., Inc. v. Just Fam, LLC,* 2010 WL 2640078, at *2 (N.D.Ga. June 28, 2010)). Joe Hand has moved for summary judgment against both the establishment, War Bama, and Eula Sheffield Neal, in her individual capacity.

      **1.**      **War Bama by Chris d/b/a War Bama**

In its response to Joe Hand's motion for summary judgment, War Bama concedes the violation of § 605. ("The UFC event was [] broadcast at the War Bama Club in Silas, Alabama. The UFC event was not authorized for broadcast at the War Bama." Doc. 36 at 1). Thus, Defendant War Bama is liable for the unauthorized broadcast of the UFC fight. Accordingly, Joe Hand's motion for summary judgment as to War Bama's liability on Count One, brought under 47 U.S.C. §605, is **GRANTED**.

      **2.**      **Eula Sheffield Neal**

In order to hold Neal vicariously liable in her individual capacity and as officer, director, shareholder and/or principal of the War Bama under § 605, Joe Hand must show that Neal had a "right and ability to supervise the violations, and that [s]he had a strong financial interest in such

---

[7] In its motion for summary judgment, the Joe Hand notes, "Plaintiff pled this matter in the alternative. After discovery, Plaintiff moves solely under Title 47 U.S.C. § 605." (Doc. 29-2 at 1, n.1).

activities." *J & J Sports Prods., Inc. v. Arboleda,* 2009 WL 3490859, at *5 (M.D. Fla. Oct. 27, 2009). Though Neal is a member of the War Bama LLC, she states,

> I was not responsible for nor was I informed or had knowledge of the day to day operations of War Bama. These responsibilities included employee management, promotional events, advertising, daily banking, management of the facility, customer relations and creation and enforcement of the rules and regulations governing the facility…These responsibilities were performed by Chris Sherman.

(Doc. 36-1 at 1, Aff. Neal). With regard to the events of July 7, 2012 Neal states:

> On July 7, 2012, I was not at the facility. I had not been at the facility for several months. I was not consulted for advised by Chris Sherman that any UFC event was advertised or that such event would be shown at the facility. I rented the satellite equipment for Dish Network for my residence. I was approached by Chris Sherman and asked if the equipment could be placed at the War Bama. I was told by Chris Sherman that due to the lack of cable, only a satellite system could be used to provide receptions for the events being shown on basic satellite. Based on those representations, I allowed Chris Sherman to move the equipment to the facility. I had no knowledge the system would be used on a manner different than what I agreed. I have reviewed the banking information for War Bama and have determined that I nor War Bama received no financial gain or benefit form the UFC event. Chris Sherman purchased the event using my account with Dish Network without my permission or knowledge. I discovered the purchase during the course of providing discovery in this case.

The Court finds that genuine issues of fact exist as to the nature and extent of Neal's control over the establishment and its activities are in dispute. Thus, Neal's vicarious liability for the violation of § 605 cannot be determined on summary judgment. *See Zuffa, LLC v. Taapken*, 2012 WL 3980169, at *2 (M.D. Ala. Sept. 11, 2012) (denying summary judgment on similar grounds). Accordingly, Joe Hand's motion for summary judgment as to Eula Sheffield Neal is **DENIED**.

D.      **Damages Under 47 U.S.C. § 605**

Under § 605, a court may grant injunctive relief, award damages, and direct the recovery of full costs, including reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B). An aggrieved party

may then elect to recover actual or statutory damages. 47 U.S.C. § 605(e)(3)(C).[8] The statute authorizes damages for "each violation of subsection (a) of this section ... in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). If the violation was committed "willfully and for the purpose of commercial advantage or private financial gain," the court may award up to $100,000 in enhanced damages. 47 U.S.C. § 605(e)(3)(C)(ii). The statute further provides, **"**In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. § 605(e)(3)(C)(iii). Joe Hand seeks both statutory damages and enhanced damages against both defendants. As there are issues of fact surrounding the circumstances related to the Defendants' broadcast of UFC 148, the issue of damages is **CARRIED TO TRIAL**.

---

[8] Section 605(e)(3)(C)(i)-(iii) provides:

> **(C)(i)** Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;
>
> **(I)** the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages; in determining the violator's profits, the party aggrieved shall be required to prove only the violator's gross revenue, and the violator shall be required to prove his deductible expenses and the elements of profit attributable to factors other than the violation; or
>
> **(II)** the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.
>
>> **(ii)** In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.
>>
>> **(iii)** In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

## V.     Conclusion

As discussed herein, Defendants' motion to strike (Doc. 34) is **DENIED**. Plaintiff's motion for summary judgment as to War Bama's liability on Count One, brought under 47 U.S.C. § 605, is **GRANTED**. (Doc. 29). Plaintiff's motion for summary judgment as to Neal's liability on Count One, brought under 47 U.S.C. § 605, is **DENIED**. (Doc. 29). The issue of damages is **CARRIED TO TRIAL**. Count Two, brought under 47 U.S.C. § 553 is **DISMISSED**.

**DONE** and **ORDERED** this **2**nd day of **July 2015**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**